UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| HAROLD L. KINGERY, )<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>    Defendant. ) | Cause No.: 2:12-CV-498-PRC |

**OPINION AND ORDER**

This matter is before the Court on a Complaint for Judicial Review [DE 1], filed by Plaintiff Harold L. Kingery on November 29, 2012, and Plaintiff's Brief in Support of Reversal of Commissioner's Final Decision [DE 17], filed on June 20, 2013. Plaintiff challenges the October 28, 2011 decision of the Administrative Law Judge (ALJ) that he is not disabled under the Social Security Act.

**I. Background**

The Court forgoes a detailed recitation of Plaintiff's medical background. Those looking for a comprehensive discussion of his medical records are directed to the extensive summaries found in the ALJ's decision (AR 15–24) and Plaintiff's opening brief [DE 17]. Rather than reiterating those summaries, the Court gives a brief overview of Plaintiff's history of health issues and how the proceedings have unfolded thus far.

Plaintiff was born on in 1950, has a twelfth-grade education, and was fifty-eight years old on the date he alleges his disability began. For many years, he worked as a millwright in a steel mill. Later, he worked as a bar manager, loan officer, toll-road worker, trailer tanker driver, and home

inspector.[1]

Plaintiff has suffered from a number of medical issues, including hypertension, hyperlipidemia, enlarged prostate, obesity, high blood pressure, arteriosclerosis, and breathing issues such as chronic obstructive pulmonary disease (COPD), emphysema, bronchitis, coughing spells, and sleep apnea. He also has suffered from knee pain and edema in his legs. He has chronic back pain, severe osteoarthritis in his thoracic spine, bony spurs in his lumbar spine, foraminal stenosis, and other degenerative changes.

Plaintiff applied for disability insurance benefits (DIB) for a period beginning April 18, 2009. This claim was denied on November 9, 2010, and upon reconsideration on January 13, 2011. After that, Plaintiff filed a written request for a hearing on February 4, 2011. The Social Security Administration granted this request, and a hearing was held on October 26, 2011, before ALJ David Skidmore.

At that hearing, Plaintiff testified that he had trouble sleeping at night because of his coughing spells—he claimed the lack of sleep made it very hard for him to stay awake at work. He explained that he had suffered from severe coughing spells for years and that his symptoms had become progressively worse. He further testified that he was unable to walk far or lift much because of his leg pain and swelling: these affected his ability to sit and stand (he apparently alternated between sitting and standing for most of the day). He testified that doctors had told him to elevate his legs whenever they swell and that he kept his feet up all the time. He also testified that he had severe arthritis in his thoracic spine and had pain that ran down his legs and back, making him unable to wear regular shoes. (He testified that he normally does not wear shoes at all.)

---

[1] The work as a loan officer, toll-road worker, and truck driver was done below the level of substantial gainful activity (SGA).

He claimed that this pain forced him to quit his work at the toll road after about six weeks because he could not stand long enough. He also testified that his job as a bar manager at the American Legion (he is a veteran) was only possible because his employer accommodated him, putting a futon in his office for him to take naps on and allowing him to work at a reduced pace. He nevertheless testified that he would work up to seven days and fifty hours per week.

Vocational Expert (VE) Randall Harding testified that no jobs would be available for those who had to elevate their legs sixteen inches for two to three hours per day or for those who fell asleep two to three times per day for five to ten minutes per nap. He also testified that if one could not stand for six hours out of an eight-hour work day, all jobs Plaintiff could otherwise perform would be eliminated.

The ALJ issued an unfavorable decision on October 28, 2011, making the following findings as part of the required five-step evaluation. At step one, he found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 18, 2009.[2] At step two, he found that, though Plaintiff suffered from a number of medical problems, he was afflicted with only one severe impairment: chronic obstructive pulmonary disease. The ALJ found at step three that Plaintiff did not suffer from an impairment (or combination of impairments) that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1. The ALJ next determined that Plaintiff had the residual functional capacity (RFC) to lift and carry up to fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk for about six hours in an eight-hour work day, and sit for at least six hours in an eight-hour workday. The ALJ also found that Plaintiff could have no more than occasional exposure to cold, heat, or environmental irritants such

---

[2] Plaintiff's date last insured was March 31, 2013.

as fumes, odors, dust, or gases.

Additionally, in crafting the RFC, the ALJ found Plaintiff only partially credible regarding his testimony about his breathing problems, pointing to, among other things, Plaintiff's sub-maximal effort in a spirometry exam and his refusal to seek treatment for his one-to-two-pack-per-day smoking habit. The ALJ found Plaintiff's testimony about his non-pulmonary symptoms not credible because many of his alleged symptoms were never mentioned in any of his medical records and because he continued to golf and worked lengthy hours at the American Legion, suggesting greater stamina than Plaintiff alleged.

In light of this, the ALJ found at step four that Plaintiff was capable of doing his past work as a home inspector and toll-road worker. Alternatively, the ALJ found that Plaintiff could work as a machine feeder (500 jobs in Indiana), machine packager (800 jobs in Indiana), or package sealer machine operator (400 jobs in Indiana). The ALJ accordingly found Plaintiff not disabled.

Plaintiff then sought review of the ALJ's decision with the Appeals Council, which denied his request, making the ALJ's denial the Commissioner's final decision. 20 C.F.R. §§ 404.955; 404.981. Plaintiff then filed this appeal on November 29, 2012, seeking judicial review.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by

4

substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734–35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55

5

F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Disability Standard

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not

disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's residual functional capacity (RFC). The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## IV. Analysis

This appeal presents four issues that Plaintiff contends justify reversal or remand of the ALJ's decision. First, Plaintiff contends that the ALJ did not provide a proper analysis of Plaintiff's credibility. Second, Plaintiff contends that the ALJ erred in rejecting the opinion of treating physician Dr. Prasad that Plaintiff was disabled. Third, Plaintiff argues that the ALJ improperly

7

crafted his RFC determination. Finally, Plaintiff contends that the ALJ's step-four analysis failed to consider important evidence. The Court considers each contention in turn.

**A. Credibility**

In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the claimant's symptoms affect his daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. In determining whether statements of symptoms contribute to a finding of disability, the regulations set forth a two-part test: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the alleged symptoms; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. *Id*.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;

(2) Location, duration, frequency, and intensity of pain or other symptoms;

(3) Precipitating and aggravating factors;

(4) Type, dosage, effectiveness, and side effects of any medication;

(5) Treatment, other than medication, for relief of pain or other symptoms;

(6) Other measures taken to relieve pain or other symptoms;

(7) Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96-7p

requires the ALJ to consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how the conditions affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996); *see also* § 404.1529(c)(1).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504–05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)). The ALJ's discussion is given a common-sense reading, and courts should not nitpick for inconsistences or contradictions. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

Here, in analyzing Plaintiff's credibility, the ALJ began by compiling Plaintiff's subjective complaints. These included allegations of breathing problems (which sometimes—because of intense coughing—allegedly caused Plaintiff to pass out), neck pain, back pain, leg pain, problems sitting or standing for any length of time, acid reflux, trouble sleeping, a burning feeling in his legs,

9

and a limp. Plaintiff reported that he had problems putting on clothing and couldn't tie his shoes. He also testified that he often fell asleep while working, could not stand or walk, and could not lift things because of neck and shoulder problems. The ALJ found that the medical evidence in the record supported at least some of these claims, but that his allegations of the intensity, persistence, and limiting effects of the symptoms were not credible insofar as they conflicted with the RFC assessment.

The ALJ explained that he found Plaintiff only partially credible regarding his breathing problems, supporting this decision with medical evidence that these problems were not as bad as Plaintiff alleged and pointing out that Plaintiff's effort at a spirometry test was sub-maximal, despite coaching, and that he had refused to seek treatment to help him quit his one-to-two-pack-a-day smoking habit.

As for the remaining allegations, the ALJ found Plaintiff not credible. The ALJ pointed out that no physician noted that Plaintiff had a limp, that no physician noted that he had any difficulty getting dressed, that there was no evidence of a shoulder impairment. He also explained that, according to a doctor's note, Plaintiff continued to golf and that Plaintiff testified that he had worked at the American Legion up to seven days and fifty hours per week . The ALJ acknowledged that Plaintiff testified that he didn't really golf (Plaintiff explained that he merely kept score and occasionally got out of the cart to putt) and that his boss at the American Legion provided accommodations for him. Nevertheless, the ALJ found that Plaintiff's level of activity and stamina was "much greater than is typical for a totally disabled individual." (AR 18).

Plaintiff does not challenge the ALJ's decision to find him only partially credible regarding his breathing problems. Rather, he contends only that the ALJ erred in his analysis of Plaintiff's

golfing and working at the American Legion. The Court considers each issue in turn.

*1. Golf*

Plaintiff contends that the ALJ should have elaborated on the circumstances of Plaintiff's golfing, arguing that the ALJ did not properly consider Plaintiff's testimony that he did not really play golf but only kept score from the cart and would occasionally putt. The Court disagrees. As mentioned above, the ALJ's decision began by noting that Plaintiff continued to golf even after the alleged onset date, citing to a doctor's note filled out several weeks before the hearing. This note stated that Plaintiff played golf once or twice per week, explaining that he was sometimes unable to play eighteen holes.

While the ALJ did not explain himself in much detail, it is evident that he regarded the discrepancy between the note and Plaintiff's testimony, crediting the former and concluding—reasonably—that the inconsistency between the two marred Plaintiff's credibility. In light of this, the ALJ concluded that Plaintiff's golfing demonstrated more stamina than what one would expect from a disabled person, further damaging his credibility. This analysis, especially when considered together with the ALJ's other reasons is not patently wrong.

*2. Work at the American Legion*

Plaintiff likewise contends that the ALJ improperly held Plaintiff's (ultimately failed) attempt to work at the American Legion against him, pointing the Court to a number of cases holding that not all work necessitates a finding that a plaintiff is not disabled. *See, e.g.*, *Henderson v. Barnhart*, 349 F.3d 434, 435 (7th Cir. 2003); *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003). This is true, but it confuses the issue here because the ALJ did not consider Plaintiff's work as a bar manager as evidence sufficient to demonstrate his ability

to work. Rather, the ALJ concluded that, even if the work was not substantial gainful activity (SGA) and taking into consideration Plaintiff's testimony about his employer's accommodations of him,[3] Plaintiff's testimony that he sometimes worked seven days and fifty hours per week nevertheless suggested a level of stamina much higher than that of a disabled person, damaging Plaintiff's credibility. This is a reasonable inference, and it was not patently wrong for the ALJ to conclude from Plaintiff's testimony that he was exaggerating his symptoms. And at worst, it is harmless error, since the ALJ's credibility determination could stand without this point.

A commonsense reading of the ALJ's credibility determination—including his discussion of Plaintiff's golfing and work at the American Legion—is supported by substantial evidence and is not patently wrong. The Court accordingly affirms the ALJ's credibility determinations.

### B. Rejection of Dr. Prasad's Opinion

On October 17, 2011, treating physician Dr. Prasad filled out a "Disability Income Physician's Statement" as part of Plaintiff's application to receive benefits from the Illinois Mutual Life Insurance Company, a private insurer. The form (which is only one page long) states that Dr. Prasad had treated Plaintiff since 2005, that Plaintiff was disabled beginning in February 2011 because of his Obstructive Sleep Apnea/COPD, and that his breathing problems limited him to walking no more than 500 feet.[4]

The ALJ gave little weight to this opinion in crafting his RFC, reasoning that it was

---

[3] Plaintiff testified that he was given a futon in his office to sleep on, that he took frequent breaks, and that he was kept on because he was a veteran. Plaintiff explained that his employer eventually cut his pay after he had been found sleeping at his desk more frequently. He also testified that he eventually stopped working because the American Legion's money dried up and he was unable to keep from falling asleep on the job and was not keeping up with orders.

[4] The Court notes that Dr. Prasad's proffered onset date (February 2011) falls nearly two years after the onset date alleged by Plaintiff (April 18, 2009).

conclusory and unsupported by any documentation. The ALJ noted that disability is a decision reserved for the Commissioner and that it was not clear from the form whether Dr. Prasad was familiar with the definition of disability under the Social Security Act. He also speculated that Dr. Prasad might have been referring to Plaintiff's previous work as a millwright, an evaluation he noted was consistent with Plaintiff's RFC. The ALJ thus concluded that "it appears likely in this case that Dr. Prasad is sympathetic to the claimant and is expressing an overstated opinion in an effort to assist the claimant in obtaining his insurance benefits." (AR 22).

Plaintiff challenges the ALJ's decision on three grounds. First, he contends that the ALJ's decision on this issue was improper because he did not support his finding that Dr. Prasad was sympathetic; second, he argues that the ALJ should have recontacted Dr. Prasad rather than speculating what the doctor might have meant; and third, he contends that the ALJ erred in affording Dr. Prasad's opinion little weight because disability is an issue reserved for the Commissioner. The Court considers each argument in turn.

*1. Sympathy*

Plaintiff challenges the ALJ's statement that Dr. Prasad was likely sympathetic to Plaintiff, arguing that the ALJ was required to give a more in-depth analysis. The Seventh Circuit Court of Appeals has often noted that a "treating physician's opinion [may be] unreliable if the doctor is sympathetic with the patient and thus 'too quickly find[s] disability.'" *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (quoting *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)). Nevertheless, a decision not to give controlling weight to the opinion of a treating physician must consider "the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed and consistency and supportability of the

physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)). Conjecture is not a permitted basis for ignoring a treating physician's views. *Id.*

The Court need not consider this question, however, because the decision could stand without this point. It thus constitutes, at worst, harmless error. Since, as will be seen below, the rest of the ALJ's analysis of Dr. Prasad's opinion can stand soundly on its own, the decision to include this sentence is not reversible error.

### 2. Duty to Recontact

The penultimate sentence of the ALJ's discussion of Dr. Prasad's opinion states that "it is possible that" Dr. Prasad's statement that Plaintiff was disabled referred to Plaintiff's "ability to return to his past occupation as a millwright, which is consistent with the conclusion of this decision." (AR 22). Plaintiff objects that the ALJ should have recontacted Dr. Prasad for clarification if he was unsure what he meant.

"An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable." *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(3)); *see also* SSR 96-2p, 1996 WL 374188, at *4). But, as with the ALJ's statements about sympathy, this sentence is simply a rhetorical addition to his otherwise sufficient analysis of Dr. Prasad's opinion.

### 3. Disability Determination Reserved for the Commissioner

The ALJ's analysis afforded Dr. Prasad's opinion "little weight since the issue of disability is an issue reserved for the Commissioner and the opinion is quite conclusory with no supporting documentation." (AR 22). To this, the ALJ added that it "is not clear that Dr. Prasad is familiar with

14

the definition of disability contained in the Social Security Act and Regulations." *Id.* Plaintiff argues that the ALJ's analysis is unsupported and should not be upheld on appeal.

A statement from a physician that someone is disabled does not mean that the Social Security Administration will find that person disabled. *See* 20 C.F.R. § 404.1527(d)(1). But this is "not the same thing as saying that such a statement is improper and therefore to be ignored." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (citing 20 C.F.R. § 404.1527(d)(1)). Instead, the ALJ must "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p, 1996 WL 374183, at *3, 5 (July 2, 1996); *see also Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013).

But, contrary to Plaintiff's contention, when evaluated in context, it is evident that the ALJ carefully weighed the medical evidence and opinions in the record. To begin with, in arriving at his decision about Plaintiff's impairments, the ALJ discussed at length the consultative examination performed by Dr. Schoucair in October 2010. Dr. Shoucair noted that Plaintiff had full range of motion in his cervical, thoracic, and lumbar spine as well as in his arms and legs. He noted that Plaintiff showed no signs of shortness of breath or fatigue, could walk well, and was in no apparent distress. Moreover, Plaintiff had a good tandem gait, used no assistive devices, had negative straight leg raising in both supine and seated position, had good muscle strength in all extremities, and could sit, stand, handle objects, hear, see, and speak.[5] Likewise, in his discussion supporting his RFC determination, the ALJ looked to the opinions of reviewing physicians Drs. Sands and Ruiz, both of whom opined that Plaintiff's physical impairments were not severe. The ALJ noted that, though

---

[5] The Court notes that it may consider analysis in other parts of an ALJ's decision when evaluating his reasoning. The decision should be read as a whole—it would be "a needless formality to have the ALJ repeat substantially similar factual analysis." *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) (citing *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985)).

these expert opinions came from non-treating and non-examining sources, they were consistent with the medical evidence as a whole.

In light of the contrary medical evidence and Plaintiff's lack of credibility regarding the severity of his symptoms, the Court finds that the ALJ's decision on this point is supported by substantial evidence and hence affirms decision in this regard.

### C. The ALJ's RFC Determination

Plaintiff next contends that the ALJ did not account for his standing or walking limitations in the RFC or his need to elevate his legs to prevent swelling. He argues that, by not mentioning these things, the ALJ failed to build a logical bridge between the medical evidence and his conclusion. *See Giles*, 483 F.3d at 487 (quoting *Scott*, 297 F.3d at 595).

Plaintiff is correct that the ALJ did not account for any alleged limitations on standing, walking, or need for Plaintiff to raise his legs. But these allegations rested on Plaintiff's testimony and Dr. Prasad's opinion that Plaintiff could not walk more than 500 feet and Plaintiff's testimony about his inability to walk and need to keep his legs elevated at all times. But, as discussed above, the ALJ reasonably discounted Dr. Prasad's opinion and found Plaintiff not credible on these points. There was, therefore, no need for the ALJ to discuss these complaints in his RFC determination, and the Court affirms the ALJ's decision in this regard.

### D. Past Relevant Work

The ALJ found at step four that, given Plaintiff's RFC, Plaintiff could return to work as a toll road worker or as a home inspector. Alternatively, the ALJ concluded that Plaintiff could do a handful of other jobs that comport with the RFC determination. Plaintiff's final contention is that the ALJ's analysis of Plaintiff's past relevant work failed to build a logical bridge between the

evidence and his conclusions.

Plaintiff is correct that he could not return to work as a toll road worker. This is because, as the Commissioner concedes, working in a toll both involves exposure to car fumes. And the ALJ's RFC determination specifically limited Plaintiff from more than occasional exposure to fumes.

But Plaintiff's argument that he could not return to work as a home inspector fails. His argument on this point merely rehashes his objections to the ALJ's decision not to find Plaintiff credible and to assign Dr. Prasad's opinion little weight. Since those findings (and the ALJ's subsequent RFC determination) are reasonable, so too was the step-four finding. In fact, as the ALJ noted, the VE testified that Plaintiff would have been able to return to his past work as home inspector even if the ALJ had found that Plaintiff was capable of doing only light work.

Moreover, regardless, of whether Plaintiff could return to work as a home inspector, the ALJ's decision can stand on the alternative step-five findings that Plaintiff could do a handful of jobs given his RFC; an RFC, which, as discussed, is supported by substantial evidence. The ALJ's step-four analysis thus does not warrant remand.

## V. Conclusion

For all these reasons, the Court finds that the Commissioner's decision to deny Plaintiff Kingery's benefits is supported by substantial evidence and is not contrary to law. The Court hereby **AFFIRMS** the Commissioner's decision and **DENIES** the Complaint for Judicial Review [DE 1], and Plaintiff's Social Security Opening Brief [DE 17].

SO ORDERED this 19th day of May, 2014.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record